UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| URANIA MARIA LOPEZ,<br><br>Plaintiff,<br><br>v.<br><br>FIRST MANGUS FINANCIAL, et al.,<br><br>Defendants. | Case No. 15-cv-00933-RMW<br><br>**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 12 |

On March 3, 2015 the court granted Plaintiff Urania Maria Lopez's application for a temporary restraining order, and set a preliminary injunction hearing for March 13, 2015. Dkt. No. 10. Plaintiff and defendants submitted briefs in advance of the hearing, *see* Dkt Nos. 12, 14, 18, which the court held on March 13, 2015. For the reasons set forth below, the court DENIES plaintiff's motion for a preliminary injunction.

To obtain a preliminary injunction, a movant must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit has also held that "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test

are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). "Serious questions" refers to questions "which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991).

Because Plaintiff has not shown a likelihood of prevailing on the merits, the court DENIES her motion for a preliminary injunction. First, most of plaintiff's claims stem from alleged defects in the securitization of her mortgage loan.[1] However, these alleged defects are all based on misreadings of the relevant assignment and substitution documents. For example, plaintiff insists that Mortgage Electronic Registration Systems, Inc. ("MERS") "by the very terms of the Deed of Trust has no beneficial interest in the note but is merely a nominee for the original lender First Mangus Financial." Dkt. No. 18, at 8. A more thorough examination, however, reveals that the deed of trust explicitly states that MERS is acting as a nominee for the lender and that "MERS is the beneficiary under this Security Instrument." Declaration of Melissa Smith, Ex B, at 13. Plaintiff also argues that Recontrust Company, which was substituted as trustee under the deed of trust in 2011, had no power to issue a notice of default in 2008. Dkt. No. 18, at 7. Examination of the notice of default reveals that in 2008 Recontrust was acting as an agent for the Beneficiary, which at that time was MERS. Dkt. No. 15-1, Ex. 3, at ECF p. 38. The documents submitted by defendants show assignment of beneficial interest in the deed of trust from the original beneficiary, MERS, to Bank of New York Mellon, Dkt. No. 15-1, Ex. 4, for whom SPS is an agent and loan servicer. They also show that Recontrust was first substituted as trustee for the original trustee, Chicago Title Company, Dkt. No. 15-1, Ex. 6, and that subsequently Quality Loan Servicing was substituted as trustee, Dkt. No. 15-1, Ex. 8. In short, the court can discern no

---

[1] Plaintiff states in her response to defendant's opposition that she "do[es] not contest the validity of the securitization," *see* Dkt. No. 18, at 6, but then argues that the documents on which defendant relies raise substantial questions about their validity and enforcement. *Id*. at 9. The court, therefore, addresses the documents offered by defendant.

ORDER GRANTING TRO
15-cv-00933-RMW                    2

defects in the way in which plaintiff's mortgage was securitized.[2]

Second, plaintiff asserts that "the basis of plaintiff's complaint is the allegation that the parties attempting to foreclose on the real property at this time are debt collectors within the meaning of the FDCPA and are not authorized to utilize nonjudicial means to obtain possession of property." Dkt. No. 18, at 9. However, the FDCPA does not seem to apply here, as the court is inclined to agree with the many courts in the Ninth Circuit which have held that "the activity of foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." *See Allen v. United Fin. Mortgage Corp.*, Case No. 09-2507, 2010 WL 1135787, at *6 (N.D. Cal. Mar. 22, 2010) (noting that although some courts in other Circuits have reached the opposite conclusion, most courts in the Ninth Circuit have held that foreclosure does not constitue debt collection under the FDCPA); *see also Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1202 (E.D. Cal. 2013); *Hulse v. Ocwen Federal Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002). Even were the court to find that the FDCPA applies to defendants in this case, "equitable relief is not available to an individual under the [FDCPA]." *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982); *see also Palmer v. Stassinos*, 233 F.R.D. 546, 548 (N.D. Cal. 2006) (noting that although the Ninth Circuit has not addressed the issue, the Third, Seventh, and Eleventh Circuits have found that equitable relief is not available to an individual under the FDCPA); *Taylor v. Quall*, 471 F. Supp. 2d 1053, 1059 (C.D. Cal. 2007); *Wyatt v. Creditcare, Inc.*, Case No. 04-03681, 2005 WL 2780684, at *3 (N.D. Cal. Oct. 25, 2005).

Third, plaintiff makes allegations regarding Bank of America's involvement in this case, but these allegations are not substantiated through any evidence submitted either by plaintiff herself or defendants.[3] More specifically, plaintiff claims that in 2008 she was contacted by Bank

---

[2] Defendant contends, relying primarily on the case of *Jenkins v. JP Morgan Chase Bank*, that plaintiff does not have standing to challenge the securitization documents because she was not a party to them. 216 Cal. App. 4th 497, 514–515 (2013). Plaintiff points to the contrary holding on a similar issue in *Glaski v. Bank of America, National Association*, 218 Cal. App. 4th 1079, 1094 (2013). Although a majority of the decisions appear to follow *Jenkins*, the issue is now pending review by the California Supreme Court. *See Mendoza v. JP Morgan Chase Bank*, 337 P.3d 493 (2014).

[3] The only reference to Bank of America that the court has found in the submitted documents is a

ORDER GRANTING TRO
15-cv-00933-RMW                                                3

of America regarding a loan modification. Declaration of Uriana M Lopez, Dkt. No. 18-1, at 2. Plaintiff alleges that she applied for a loan modification and made payments for ten months on a trial modification basis. *Id*. She further alleges that when she contacted Bank of America after making payments for ten months, Bank of America informed her that there were no records that plaintiff had ever been offered a modification or that she had made any payments. *Id*. She again applied for a modification with Bank of America and was denied. *Id*. Plaintiff claims she was thereafter informed by Bank of America that Bank of America was not the loan servicer and she should contact Bank of New York Mellon. *Id*.

As an initial matter, these allegations were raised for the first time in plaintiff's reply in support of her motion for a preliminary injunction, and do not appear in her complaint. However, even were the court to consider these allegations, plaintiff submits no documentation whatsoever regarding Bank of America's involvement in the case. No evidence has been submitted which substantiates her communications with Bank of America or the alleged payments. Nor does plaintiff explain how these interactions, which allegedly took place in 2008, provide a basis for issuing a preliminary injunction, especially in light of the fact that she has been in default and not making any payments on her mortgage for the six years following her alleged communications with Bank of America. The fact remains that plaintiff has been in default since 2008 and apparently took no steps to rectify this between her alleged communications with Bank of America and Bank of New York Mellon in 2008 and 2014, when SPS scheduled a foreclosure sale.[4]

Finally, the court granted plaintiff's application for a temporary restraining order in large part on the basis that plaintiff might be able to show reliance on Quality Loan Servicing's representation that the planned foreclosure sale set for March 2, 2015 would be put on hold pending the outcome of plaintiff's litigation against defendants. *See* Dkt. No. 10, at 1–2.

---

request by the bank to record an assignment of deed of trust by MERS as holder of the deed of trust (assignor) to Bank of New York Mellon.

[4] However, the court notes that while these allegations are not sufficient to support the issuance of a preliminary injunction, should plaintiff substantiate and prevail on her claims later in the case, other remedies would be available to her.

ORDER GRANTING TRO
15-cv-00933-RMW                    4

Defendants contend that this point is now moot, as plaintiff admits she has at this point voluntarily dismissed her state court action. *See* Dkt. No. 18, at 5. Plaintiff argues that the representation amounted to a promise to postpone foreclosure pending the resolution of both the state court action and the instant action, asserting that she was advised that the foreclosure was on hold "pending the outcome **of litigation** between the parties." *Id*. (emphasis in original) However, plaintiff's quotation is incorrect. According to the email attached to plaintiff's temporary restraining order application, she was informed by Quality Loan Servicing that the foreclosure would be placed on hold "pending the outcome of **the** litigation." Dkt. No. 12, at 4 (emphasis added). Plaintiff alleges that she received this assurance on December 24, 2014. *Id*. As the instant action was not filed until February 27, 2015, *see* Dkt. No. 1, at the time plaintiff was informed the foreclosure was on hold pending the outcome of the litigation, the only litigation to which the communication could have referred was the state court action. Accordingly, because plaintiff herself voluntarily dismissed her state court action against defendants, the court finds that the question of plaintiff's reliance on this representation is now moot.

For the foregoing reasons, plaintiff's motion for a preliminary injunction is DENIED.

**IT IS SO ORDERED**.

Dated: March 16, 2015

_Ronald M. Whyte_
Ronald M. Whyte
United States District Judge

ORDER GRANTING TRO
15-cv-00933-RMW                5